LOTTINGER, Judge.
This is an action for damages ex-delicto instituted by E. E. Wright and his employer, Union City Transfer, against J. E. Barnes. Wright seeks damages for personal injuries in the sum of $1,000.00, and Union 'City Transfer seeks property damages in the sum of $480.33. Defendant Barnes filed a reconventional demand wherein he originally sought personal and property damages in the sum of $35,254.75. By an amended answer and reconventional demand, defendant’s claim was increased to $41,921.75. Joined as defendants in re-convention were E. E. Wright, Union City Transfer, and The American Fidelity and Casualty Company of Richmond, Virginia, the liability insurer of Union City Transfer. The lower court rendered judgment in fav- or of Union City Transfer in the sum of $480.33, and in favor of Wright in the sum of $50.00, and rejecting defendant’s recon-ventional demand. Defendant has taken this appeal.
The accident occurred at a point on U. S. Highway 90 at the western edge of the corporate limits of the town of Sulphur, Louisiana, between the hours of 9:00 and 10:00 o’clock on the night of Saturday, May 13, 1951. The highway at that point is a paved 18 foot concrete slab running east and west, and is straight and level for several hundred yards in either direction from the point of impact. There was nothing unusual, or particularly dangerous, about the shoulders of the highway at the scene of the collision, except that a few feet west of the point of impact the highway crossed *426 over a canal and, although the road remained level, the shoulders were not as wide over the canal as they were on either side of it. There was no bridge in the normal sense of the term, the canal apparently ran under the highway through a culvert. From photographs introduced into evidence, the shoulders at the crossing were evidently about four or five feet in width. It had been raining prior to the accident, and was raining when the collision occurred. The night was a .misty one, with intermittent rains. The highway and shoulders were wet, and visibility was poor.
The findings of fact, by the lower court, were as follows:
“Immediately prior to the time of the collision Barnes was driving his 1941 automobile in a westerly direction on U. S. Highway 90, and Wright was driving a 1946 model International truck with a pole trailer attached in an easterly direction along the same highway. Both vehicles at that time were in good mechanical condition, with lights and brakes in proper working order. The truck which was being driven by Wright was loaded at the time with a load'of casing pipe, the truck, trailer and load having an over-all gross weight of more than 41,000 pounds. The truck with its load was approximately eight feet wide and forty-five feet long.
“The evidence indicates to the satisfaction of this court that as the two vehicles approached each other from opposite directions, Barnes permitted the right front wheel of his car to run off the north edge of the concrete slab. In order to get his car back on the pavement he turned the front wheels sharply to his left. He was successful in getting his car back on the paved portion of the highway but a collision between his car and the approaching truck occurred about six or eight feet west of the point where his car regained the pavement. The left front portion of the Barnes car struck the left front corner of the 'bed of the Union City Transfer truck. The automobile and the truck were both damaged as a result of the collision.
“The impact caused Barnes to1 (be thrown out of his automobile and his car after skidding around on the highway one or more times, came to rest from 35 to 60 feet west of the point of impact, facing in a southeasterly direction, with its back wheels on the pavement and its front wheels on the south shoulder of the highway. The truck came to. rest about 200 feet east of the point of impact, parked parallel to and along the south side of the highway, facing in an easterly direction.”
The above findings of fact by the lower court were substantially in accord with the allegations of petitioners. The defendant, on the other hand, alleges several factual conditions which are directly in conflict with those of petitioners.
The defendant claims that shortly prior to the collision, he was proceeding westerly along the highway at a speed of 30 miles per hour. Upon rounding a curve some few hundred yards from the point of impact, he noticed the headlights of the truck at a distance. Upon proceeding further, and upon reaching a distance of about one city block from the truck, defendant alleges that he noticed the truck to be on defendant’s side of the highway, whereupon he blinked his headlights several times in order to attract the attention of the truck driver. Upon the truck driver’s failure to heed the warning of defendant, the defendant turned his car to his right to avoid being struck head-on by the truck. During all this time, the defendant claims that he continued to slow his speed from the original 30 miles per hour. At the moment of impact, defendant claims that his car was in his right-hand lane, with the right-hand wheels of his car some two or more feet on the shoulder. He further contends that, at the time, his car was parallel to the highway.
The lower court found that the collision was due to the negligence of defendant, and that there was no contributory negligence on the part of Wright. In accordance with its findings it gave judgment in favor of petitioners, in the amounts mentioned above, and dismissed defendant’s demand in recon-vention. Defendant filed this appeal contending that the judgment of the lower court was contrary to the greater weight of the testimony and the evidence.
As is usually the case in a suit of this nature, the testimony elicited by the oppo *427 site sides in this controversy is greatly contradictory and irreconcilable. Photographs introduced into evidence conclusively show that the car belonging to Barnes suffered its greatest amount of damage on its left front side. The truck, on the other hand, suffered no damage to its front portion. The point of impact on the truck was to the rear of the cab, on the left side. We believe that the photographs conclusively show that the point of impact on the car was at the extreme front left end, whereas the impact on the truck was some two feet to the rear of the cab, on the left side; at a point some seven or eight feet from the extreme left front end of the truck. Thus, at the moment of impact, the vehicles must have been traveling at an angle away from each other. Assuming that the car driven by Barnes was traveling parallel to the highway at the moment of the impact, as was testified by Barnes, then the truck must have been traveling at an angle to the highway from the truck’s left to its right. Further assuming the correctness of Barnes’ testimony relative to the position of his car at the moment of the impact with its two right wheels “at least two feet on the right shoulder” would place the truck at an angle across the highway with the front end of the truck in its right lane and the rear portion of the truck on the left lañé, or possibly on the shoulder. If our assumptions were Correct, the point of impact would have been at' approximately four feet south of the north edge of the concrete slab. Considering further the length of the truck to be about 45 feet, as was shown on trial, and the point of impact on the truck to be some eight feet from the front end, would place the point of impact some 37 feet from the rear end of the truck. From the angle at which ’ our assumptions have placed the truck, and our assumed point of impact (4 feet from the north edge of the concrete slab) the rear end of the truck, or at least the rear left end of the truck, must have been coming off .the north shoulder of the highway. It is most inconceivable that the accident could have occurred in such a position, especially in view of the contention by defendant that the truck was proceeding at a very rapid rate of speed. Such an occurrence is further rendered impossible in view of the fact that, after the impact, the car continued down the highway and finally came to rest on the opposite side of the highway. Had the defendant been proceeding at a speed of .10 or 15 miles per hour, as testified by defendant, and the accident had occurred as testified by defendant, the force of the impact would have thrown his car into the ditch on his right-hand side of the highway.
The petitioner, on the other hand, contends that, shortly prior to the accident, he was proceeding in his right-hand lane at a speed of 25 miles per hour. When he first noticed the defendant’s car approaching, the car was in its right-hand lane. Upon nearing the car, petitioner claimed that the right wheel of the car apparently dropped off the right-hand side of the pavement, whereupon defendant swerved to bring it back on the pavement. In so doing, the defendant’s car crossed the center line and struck the truck. Petitioner claims that, upon his seeing defendant swerve into him, he turned to his right, and that, at the time of the impact, the right wheels of the calb were just off the pavement. After being struck, petitioner applied his brakes but they would not work. The truck rolled to a stop some two hundred feet beyond the impact, without the use of brakes. The evidence shows that the force of the impact severed the hydraulic cable leading to the brakes, thus the truck was completely without brakes after the impact. Considering the distance the truck travelled after the impact, and the fact that it was without brakes, we believe the speed of 25 miles as testified by Wright was about correct. The truck driver testified that, after the impact, he looked into the rear view mirror and saw defendant’s car turn completely around in the highway several times. Considering the force of the impact, the spinning of the car, and the distance of some 35 to 60 feet that the car travelled after the impact, we believe that defendant was proceeding at a speed far in excess of the 10 or 15 miles per 'hour to which he testified.
Several witnesses testified that most of the debris from the collision was scattered along the north lane of the highway, from *428 the point of impact for some distance in the direction in which the car travelled after the impact, The majority of debris was about two feet north of the center line of the highway. A small amount was south of the center line. There is no dispute that the great majority of the debris was from the defendant’s car. The defense stresses the fact that the greater amount of debris was in the north lane, concluding thereby that the impact occurred in the north, or defendant’s lane. We do not concur with said reasoning. Assuming the point of impact to be just to the south of the center line, as is claimed by petitioners, then at the moment of impact the greater portion of defendant’s car would have been on the north side of the center line. The truck would tend to act as a shield preventing the debris from falling in its lane. Furthermore, the great force exerted by the heavy truck would have a tendency to throw the debris backward. On the other hand, had the collision occurred in the north lane, as claimed by defendant, we believe the major portion of the debris would have been more to the north of the center line, or possibly on the north shoulder.
Evidence was introduced to show that there were tire marks on the north shoulder in the area where petitioner claims that defendant ran off the highway just prior to the impact. Several witnesses testified on this score, and each of them indicated that said tire marks looked as though someone, had run off the highway and had swerved to get back on. These marks' were placed some distance east of the point of impact, indicating that, at the moment of impact, the defendant had swerved his car back unto the concrete. Had the right wheels of defendant’s car been some two feet on his right shoulder at the moment of impact, as is claimed 'by defendant, the force of the impact with this heavy truck would, certainly, have caused defendant’s car to cut deep ruts in the wet shoulder. No testimony whatsoever was introduced on this score.
We believe that the evidence conclusively shows that the factual circumstances surrounding this accident were as stated by the lower court in its written opinion. Appellant would have us find error with such conclusions. It is well settled in this-state, that we are not bound by the findings of fact of the lower court. However, the appellate courts of this state have consistently refused to disturb the findings of fact of the lower courts unless clearly erroneous. This proposition of law has arisen because the lower courts are confronted with the witnesses, and is in a much better position to evaluate and weigh such testimony, as they might consider the manner in which the testimony is presented by the witnesses. The appellate courts, on the other hand, are not confronted with the witnesses, and must reach their conclusions by reading the written record. There is certainly no reversible error appearing in the record of this case. As a matter of fact, from our examination of the record we are convinced that the greater weight of the evidence is clearly in favor of the decision given by the lower court. We believe that the lower court was correct in its conclusions as follows:
“After considering all of the evidence, this Court is convinced that the truck being driven by Wright was entirely on the south, or its right, side of the highway at the time the collision occurred, and that the point of impact, therefore, was south of the center line of such highway. The Court is further convinced that immediately prior to th£ accident Barnes permitted the right front wheel of his car to run off the north edge of the concrete slab, and in an effort to get his car back on the pavement, he turned the front wheels of his car sharply to the left. The car did return to- the paved portion of the highway, but 'before Barnes could get it straightened out the car crossed the center line of the highway and collided with the truck.
“Barnes was negligent in failing to keep his car under proper control, and in permitting it to cross the center line of the highway and collide with the Union City Transfer truck which was traveling in its proper lane of traffic. This, negligence on the part of Barnes was the proximate cause of the accident.”
*429 As to the question of damages, the evidence shows that the damages to the truck was in the sum of $480.33, the sum awarded below. Petitioner Wright suffered no injuries, the award below in the sum of $50.00 was for shock and nervousness following the accident. Petitioner Wright does not claim said amount insufficient.
For the foregoing reasons, the judgment of the lower court is affirmed.
Judgment affirmed.